In light of this Court's recent decision in the Charles case, which held that 11351.5 categorically is a 4 v. 1.1 controlled substance offense, I'd like to focus this morning on the second issue raised in the brief, which is the reasonableness of the sentence imposed upon Mr. Mitchell. Which is what? I'm sorry, I missed a word you said. Your second issue is? The reasonableness of the sentence that was imposed by the district court. Okay, I see. The district court found Mr. Mitchell to be a career offender and therefore applied a guideline, section 4 v. 1.1. The district court adjusted the sentence downward 43 months based upon its belief that the sentence imposed, called for by section 4 v. 1.1 was excessive and that the disparity between crack cocaine and powder cocaine was enormous, disproportionate, and did not justify the sentence called for by section 4 v. 1.1. I guess the problem I have with that argument is I'm not sure that it was the crack cocaine that put your client in the high guideline range. It was the armed career criminal calculation. Exactly. It was 4 v. 1.1. Not armed career criminal, but career criminal. I mean career criminal. I'm sorry. It was 4 v. 1.1. And exactly, that's what set the offense level in section 4 v. 1.1 at 37. The life max for more than 50 grams of crack cocaine, the maximum sentence is life, and therefore the applicable guideline range in 4 v. 1.1 was level 37. Well, would the career offender range have been lower than your sentence if this was powder? It would have, Your Honor. The current disparity is 100 to 1. Fifty grams of crack cocaine will buy you a lifetime. You need 5,000 grams, 5 kilograms of powder cocaine for that same maximum sentence. And so had this been a small bag of powder cocaine as opposed to crack cocaine, the applicable guideline range would have been a 32, not a 37, and would have ended with a significantly lower guideline range. And the district court recognized this unfairness and essentially gave Mr. Mitchell a sentence sort of between those two guidelines, between those two guideline sections. The district court imposed 219 months and subtracted 39 months for the state credit for the time he was sentenced. See, what I'm trying to understand is the government's brief. If I read it correctly, it says he got more than he was entitled to. He really, you know, maybe the government should have taken a cross appeal because the career offender status would put him even higher. And that, if I read them correctly, they say that the powder crack disparity really doesn't have anything to do with that. Your Honor, it does read the government's brief correctly. And what the government essentially says is because this was not a 2D1.1 case, a typical drug case where the drug guidelines apply, but rather it was a 4B1.1 career offender case, the disparity between powder and crack cocaine has nothing to do with it. We would certainly disagree with that premise for a couple of reasons. First of all, this was not a statutory sentence. This was a 4B1.1 guideline sentence. And as the Harris case said, the Seventh Circuit in the Harris case said, there's nothing about 4B1.1 that's any less advisory than any other guideline range or guideline provision in the manual, in the guideline manual. There's nothing magical about 4B1.1 that makes it immune to variances or immune to the 3553A analysis. And so we're not talking about a statutory sentence in this case. Certainly, 4B1.1 derives its guideline range from the Section 841 maximums. But 4B1.1 is a guideline section, just like every other guideline section in the book, and we know pursuant to Booker that those guidelines provisions are now advisory and a district court must, pursuant to 3553A, impose the sentence that is sufficient but not greater than necessary to meet the overall sentencing goals of 3553A. And that's exactly what the district court did in this case. We simply believe that the district court did not go as far as it should have. Several months after the sentencing in this case, the federal government, the Department of Justice, has done a 180 with respect to its position on the crack-powder disparity. In Kimbrough, at the end of 2007, the government said the 100 to 1 ratio is reasonable, it should be supported, it's actually quasi-mandatory. And then in April 2009, through Assistant Attorney General Brewer, the government finally came out and said this crack-powder cocaine disparity, it makes no sense. It has no basis in the statistical analysis. It has no basis in common sense. And the proper thing to do is to eliminate the disparity. And so when the district court sentenced Mr. Mitchell in 2008, essentially the Supreme Court had said the disparity didn't make any sense. The sentencing commission reports had said the disparity did not make any sense. But the government, the federal government was still taking the position that the disparity was proper and should be enforced, but following the sentencing of Mr. Mitchell's case, the government now even says the disparity should be eliminated. It makes no sense. It's unfair. It's improper. And we're asking this court to remand the case to the district court for re-sentencing so that the district court can re-sentence Mr. Mitchell, consider once again the 3553A factors, the seriousness of the offense, the nature and characteristics of the offense, the need for just punishment, but do so in light of the federal government's new position, which was not in place at the time of Mr. Mitchell's original sentencing, that the crack-powder disparity should not be applied. It makes no sense and that it's unfair. And with respect to the government's position that none of this matters because this was a career offender case, it does matter. This is a 3553A analysis. And even if the disparity by itself may not be relevant because this is not a typical 2D1.1 case, when all these people are finding that the disparity is unfair, the disparity is unwarranted, I think necessary to that conclusion is the conclusion that the crack cocaine guidelines are simply too high. No one is saying that we should eliminate this disparity by ratcheting up the pack of cocaine. That isn't even in the case anymore, is it? In this case, colloquially as I read it, the judge asked him about his plea agreement. He said if his offense level is 29 or below, he wouldn't appeal. He was waiving his right to appeal. Why is he bound by that? Well, the offense level in this case was 34. And the district court brought the sentence down. But the offense level the district court found was 34. He lowered it to 29. Well, the government hasn't raised the appeals bar by the waiver of the plea. Well, it's in the record that he said in open court. The judge went over it with him. He said, do you understand this? And he said, yes. Well, that hasn't been an issue in the briefing. And I'll take a look at it. Well, we read the record. Of course, Your Honor. And we read the briefs. Of course. And it just seemed to me that it's a fool's errand to have the court go through the colloquy with the defendant and make sure he understands and then he's not bound by it on appeal. Well, the ultimate sentence certainly was below the level 34. But the total offense level that was adopted was a 34. I think that's what drives these plea agreements. It's the total offense level that's adopted. And the total offense level in this case, it was a 34. And the sentence certainly, the ultimate sentence was lower than that. But I would submit that the total offense level drives the appellate waiver. And in this case, the total offense level was 34. But I would, going back to my comment, I think when you find that there's this unwarranted disparity between crack and powder cocaine, you're necessarily finding that the crack cocaine guidelines are simply too high. They're unreasonable. And in this case, the district court found that they were unreasonable, brought the sentence down 43 months, which Mr. Mitchell certainly appreciated. But given the federal government's about face with regard to the appropriateness and the fairness of the disparity and the fact that it should be eliminated, not that the powder guidelines should come up, but the crack guidelines should come down, just to make a more fair system, we'd appreciate a remand to the district court. So if you consider a sentence in light of this federal government change in position with regard to the crack powder disparity. If the Court has no further questions, I'll take my final 50 seconds for rebuttal. Very well. We'll hear from the government. Good morning. John Claude Andre on behalf of the United States. Judge Goodwin, I guess I'll address your question to my friend Mr. Burcham about why we didn't move to dismiss this appeal. The pre-agreement in this case stated that the defendant would waive his right to appeal if the district court determined, and I'm quoting, determined that the total offense level is 29 or below. In our office, we typically take a pretty conservative, strict construction view of our pre-agreement language since we draft it. And in this case, Judge Feese did calculate the total offense level at 34 and then used a book reverence to bring him down to a sentence that corresponds to the range falling at total offense level 29. But because Judge Feese didn't, quote, determine that it was level 29, we figured that it wouldn't be wise for us to press the appeal waiver issue. Well, he said he was using 29. At the end of the day, he did, yes. I mean, it was a close call, but I just wanted to explain to you why we didn't press that issue. Turning to the reasonableness of the sentence, I want to be clear about what the government's position is. Certainly under Kimbrough, or certainly under Booker, all guidelines are advisory. And certainly under Kimbrough, a district court can disagree with any guideline on policy grounds. But there are kind of three different ways that a district court could disagree with a guideline on policy grounds, and it's subject to different levels of review on appeal and different amounts of deference by appellate courts. In Kimbrough, we had kind of twin infirmities. There was the subject commission did not fulfill its traditional institutional role of collecting empirics and then adjusting the guidelines over time to reflect the empirics that the commission was studying, nor did you have an express congressional mandate for the guideline sentence. So the Supreme Court said in Kimbrough that that guideline is really entitled to no deference, 2D1.1. Then there's a second class of guidelines where the sentencing commission is fulfilling its traditional institutional role of collecting empirics and studying them. And the court can disagree with those guidelines, but it's subject to closer review on appeal. It's a little more suspect. As the Supreme Court said subsequently in Spears, a district court, when it undertakes that analysis, is stepping away from its discrete institutional strength. Then we have this third category, which is where this case falls. And that's where you may not have empirics studied by the sentencing commission, but you have a clear congressional mandate that's embodied in 28 U.S.C. 994H. It applies to recidivist offenders, such as the career offender guideline, and also child pornography. Those are two examples. The Department's position is that when a court – that basically when there is that clear congressional expression, a court can't disagree on policy grounds with that guideline. A court could still apply the 3553A factors to vary away from the guidelines. It's not that the career offender or child pornography guidelines are mandatory. It's just that there's this very narrow sliver of policy disagreement that a court can't base its variance on when Congress has put its thumb on the guideline scale and said this is what the sentence has to be. So in this case, Judge Fees, because he said that his downward variance of 43 months was based on the crack powder disparity, he walked into that very narrow sliver where I don't think he can go. Essentially, to I guess adopt the defendant's position, Judge Fees should have ignored two congressional expressions. One, the mandatory minimum set by Congress for crack offenses, and then two, 994H's direction that the career offender guideline following lockstep with – I'm sorry, with stat max. Congress' expression of the stat max and the 994H's direction to the commission that it key its guideline to the stat maxes in 841. And as a result, that's why we believe that it's improper for Judge Fees to base a downward variance on the crack powder disparity in this career offender case. Again, Judge Fees could have done it by saying that the particular circumstances of this particular crack offense under 353A1 overstated the seriousness of the offense, or that in his experience and the experience of his colleagues in the central district, that this sentence, that a guideline sentence would have created an unwarranted sentence of disparity, but to step away, again, using the term from Spears, from the Court's discretionary view, and to use the term from the Supreme Court's discretionary  And so the fact that the Supreme Court can't disagree on institutional strength and disagree on policy grounds with the career offender guideline in a crack case is improper because of the twin congressional mandates, both in the 841 man-mins and stat maxes and then also in 28 U.S.C. 994H. I hope that clarifies. It just can't be extended to my colleague earlier. Our position is that. And it's always nice when you construct a three-level standard of review for what could be a simple determination. I don't know. Well, I guess we have to live with it if it's what the Supreme Court said, but I don't want to look at those cases that you cite. Absolutely. And as far as, I guess, making this case easy, ultimately, I don't even think this Court really needs to struggle with the three different kinds of policy-based disagreements that this Court can reach because Kimbrough and Spears both say that when a district court that district courts are not required to have policy disagreements with the guidelines, they can go ahead and apply them as the starting point, the initial benchmark, and then go straight to the rest of the 35 to 3 factors. So given that Judge Fees in this case did take into account the defendant's background, he noted that there were some mitigating things about his work in the  There were some aggravating things. Basically, the fact that he was repeatedly involved in the drug trade and had a violent past. So I think the Court can go past my kind of technical parsing of policy disagreements and just say Judge Fees imposed a reasonable sentence because although he wasn't or may or may not have been empowered to disagree with the career funder guideline, he did consider the rest of the 35 to 3 factors, and that is all that is required in this case. Finally, with respect to Assistant Attorney General Breuer's testimony, I don't want to get warrants too much in response. Mr. Breuer was acting in this capacity as a lobbyist. I mean, a very powerful lobbyist, one who could have my job with his fingers, but ultimately it's up to Congress and the President to change the crack powder disparity in 841, and then it's up to the courts to apply the Supreme Court's instructions on how to deal with the crack powder disparity. Again, Judge Fees attempted to do so here, and given that Lanny Breuer has asked Congress to change the mandatory minimums in 841, it doesn't make Lanny Breuer's statements law. He was, at the end of the day, simply acting as a lobbyist. If the Court has further questions, I'll submit. No questions. Thank you. Mr. Bertram, you have some reserved time. Thank you. Just a couple of points. The district court in this case did not have any sort of policy disagreement. The district court in this case just simply felt the crack guidelines were much too high, they were disproportionate, and that they were unfair. So this isn't about policy disagreements and whether this contradicts 944A. This is about the district court. But it is a policy disagreement with the crack powder disparity. And we've got some cases, I think, saying that courts do not inevitably have to allow for it. They can. But I don't know we have a case saying they have to. In this circuit, this issue hasn't been addressed. But even if a judge should not address disparity in a career offender case in and of itself, it counts enormously in 3553A. It counts towards what is a just punishment. It counts towards giving a fair punishment. It counts towards taking into account the seriousness of the offense. In this case, if Mr. Michella had 2.5 grams less of crack cocaine, the maximum would not have been liable. The guideline range would have started at 32 and he'd be serving five years less than 33% lower sentence than he's serving right now. So we think the district court certainly had the power to consider the disparity. Whatever we call it, whether it's a disparity or just unfair crack sentences by disparity, it did. Mr. Michella appreciated that. But we think given the government's, whether it's a lobbying position or whatever, the assistant attorney general was clearly representing the federal government's take on this much-discussed topic over the past two decades. And we'd appreciate, Judge, if he's having a chance to look at this case again, given that even the government now says that the crack guidelines that were applied in this case were unreasonable. Thank you, counsel. The case just argued will be submitted for decision. And we'll hear argument next in United States v. Almondaris.
judges: Goodwin, Canby, O'Scannlain